Rachel E. Kaufman, CA Bar No. 259353
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

Amanda F. Benedict, CA Bar No. 200291
LAW OFFICE OF AMANDA F. BENEDICT
7710 Hazard Center Dr., Ste E-104
San Diego, CA 92108
Telephone: (760) 822-1911
Facsimile: (760) 452-7560
amanda@amandabenedict.com
*Counsel for Plaintiff and all others similarly situated*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CAMPHOR, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NORTHCENTRAL UNIVERSITY, Inc., a California not-for-profit corporation, NATIONAL UNIVERSITY SYSTEMS, INC., JOHN F. KENNEDY UNIVERSITY, <br><br> Defendants. | Case No. '19CV2269 WQHJLB <br><br> **CLASS ACTION COMPLAINT** <br><br> (DEMAND FOR JURY TRIAL) |

## CLASS ACTION COMPLAINT

Plaintiff Michael Camphor ("Plaintiff Camphor" or "Camphor") brings this Class Action Complaint against Defendants Northcentral University ("NCU"),

National University Systems ("NUS"), and John F. Kennedy University ("JFKU") to stop Defendants from violating the Telephone Consumer Protection Act by making unsolicited, prerecorded and/or autodialed calls to consumers without their consent, and to otherwise obtain injunctive and monetary relief for all persons injured by the conduct of Defendants. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. NUS is a private nonprofit network of online and brick-and-mortar schools for higher educational learning. Comprised of several university affiliates – including National University, JFKU, and NCU – NUS relies on lead generators to generate students for its flagship institution, National University, as well as for its various affiliates, including JFKU and NCU.

2. NCU is a private non-profit online university with over 10,000 registered students.[1] NCU caters to graduate students. NCU does not have any physical campus or equipment other than its online courses.[2] Students are nonetheless required to pay up to $78,490 to participate in programs offered online by NCU.[3] In January of 2019, NUS purchased NCU.[4]

3. JFKU is a non-profit private University located in Pleasant Hill, California. In 2009, JFKU became an affiliate of NUS.

4. With NUS's assistance and oversight, NCU and JFKU utilize lead generators to bring potential students to their "universities".

---

[1] https://en.wikipedia.org/wiki/Northcentral_University
[2] https://catalog.ncu.edu/mime/media/26/1296/NCU+Catalog+-+July+2019.docx.pdf
[3] https://catalog.ncu.edu/mime/media/26/1296/NCU+Catalog+-+July+2019.docx.pdf
[4] https://www.insidehighered.com/quicktakes/2019/01/08/national-university-system-purchases-profit-university

5. Leads for Defendants' online education programs are generated from centralized telephone numbers, including the number 443-341-5711, which are used to call consumers and when called back identifies the number as belonging to both NCU and JFKU, both part of NU.

6. These lead generators call consumers without consent and if they can get a live consumer on the phone, they transfer the call to a screener who screens the lead. Without first obtaining the consumer's consent to receive pre-recorded calls, the lead generator transmits the lead to Defendants who immediately make a pre-recorded and/or autodialed call to the consumer in violation of the Telephone Consumer Protection Act.

7. None of the Defendants nor any of their outsourced telemarketing partner have prior express written consent to be placing calls to consumers using prerecorded messages and/or an autodialer.

8. In Plaintiff Camphor's case, Camphor received unwanted pre-recorded and autodialed calls from Defendants without ever giving Defendants prior written consent to call his cell phone number with a pre-recorded voice or autodialer.

9. In response to this call, Plaintiff Camphor files this lawsuit seeking injunctive relief, requiring Defendants to cease placing, or having agents place, unsolicited, prerecorded and/or autodialed calls to consumers' cellular telephone numbers, as well as an award of statutory damages to the members of the Class and costs.

## PARTIES

10. Plaintiff Camphor is a Baltimore, Maryland resident.

11. Defendant NCU is a California not-for-profit corporation headquartered in San Diego, California.

12. Defendant JFKU is a California nonprofit corporation headquartered in Contra Costa County, California.

13. Defendant NU is a California nonprofit corporation headquartered in San Diego, California.

## JURISDICTION AND VENUE

14. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

15. This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed from this District.

## COMMON ALLEGATIONS

16. NCU relies heavily on third-party lead generation companies to provide it with potential leads for its university.

17. For example, NCU has used Center Street Interactive to generate leads through telemarketing to prospective students:

> [5] For over a decade, CSI has provided valuable leads to the education, financial services, mortgage, real estate, debt settlement, and merchant cash advance verticals. Our clients have ranged from tremendous institutions like Grand Canyon University and Northcentral University, to debt and tax repair and settlement companies like Credit Solutions. We have the ability to deliver national or geo-targeted campaigns that can help businesses in a variety of industries achieve instant revenue growth.
>
> Our proprietary RubyGold technology combines content rich websites with direct email campaigns, and an internal telemarketing center. Our leads are generated organically, not through a co-reg path, and they are call verified to ensure some of the highest contact and conversion rates in the industry. Because of this approach our leads have higher contact rates, higher conversion rates, and ultimately lead to a more favorable cost-per-acquisition (CPA) than our competitors.

18. NCU also relies on and purchases leads from websites such as EducationChoices.com.[6]

19. NCU is constantly working on its lead generation processes by partnering with agencies that enable it to generate more and seemingly better leads

---

[5] http://centerstreetinteractive.com/project/lead-generation/
[6] https://www.educationchoices.com/42/contact

using preadmission call centers that screen leads before the leads are transferred to NCU.

20.     For example, NCU partnered with Level Agency, a marketing agency that took over preadmission calls for NCU:



21.     The aforementioned article makes reference to NCU's near-instant-speed-to-lead practices, meaning NCU contacts screened leads as soon as they are screened.

22.     Defendants make pre-recorded calls from at least one phone number that identifies the phone number as belonging to both NCU and JFKU, which are part of NU. When calling the phone number that called Plaintiff, the pre-recorded message states: *"Thank you for calling Northcentral University and JFKU FlexCourse, part of National University systems. Please hold for the next available advisor."*

23.     In Plaintiff's case, he was repeatedly called by a lead generator promoting going back to school. Frustrated at receiving these calls and wanting to know which company was behind these calls, Plaintiff pretended to be interested in what the telemarketers were pitching, a paid tuition program. While still answering generic questions about what he was supposedly interested in and before he could even give the telemarketer his phone number and his prior written express consent to receive calls, he received a pre-recorded voice call from NCU.

---

[7] https://www.level.agency/case_studies/ncu/

24. Former employees of NCU have complained:

- "Instead of calling students who are genuinely interested in school, you call all kinds of weird leads from who knows where. It is a difficult sell when people never requested information from a school they never heard of."[8]

- "Leads are bad."[9]

- "The pay is decent but that is if you do not mind making 200 calls a day."[10]

- "not enough investment in good leads"[11]

25. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

26. Yet in violation of this rule, Defendants fail to obtain any express written consent prior to placing prerecorded and autodialed solicitation calls to cellular telephone numbers such as those of Plaintiff Camphor.

27. In placing the calls that form the basis of this Complaint, Defendants (or agents working on behalf of Defendants) utilized a prerecorded voice and/or automatic telephone dialing system ("ATDS" or "autodialer") in violation of the TCPA. Specifically, the hardware and software used by Defendants' agents has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion

---

[8] https://www.glassdoor.com/Reviews/NCU-Northcentral-University-Reviews-E128722_P4.htm
[9] https://www.glassdoor.com/Reviews/NCU-Northcentral-University-Reviews-E128722_P8.htm
[10] https://www.glassdoor.com/Reviews/NCU-Northcentral-University-Reviews-E128722_P2.htm
[11] https://www.glassdoor.com/Reviews/NCU-Northcentral-University-Reviews-E128722_P10.htm

without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention). Defendants' autodialer is also capable of delivering prerecorded voice messages.

28. Defendants should ensure that it has the required prior express written consent that is required prior to placing pre-recorded calls to consumers.

29. There are numerous complaints posted online from consumers that received unsolicited calls from NCU. This is a small sampling of those complaints, many of which indicate the use of a dialer, and/or prerecorded message:

- "Spam calling and texting number used by Northcentral University, one of several they deploy. Extremely annoying!"[12]

- "This is just another spam tie-line number for Northcentral University, using a number issued by the notorious Verizon office in Washington, VA. Other numbers used by Northcentral are (480)526-4978 and (808)425-9263. The Verizon Washington VA office is responsible for over 90% of the spam calls we get in Virginia. Northcentral has been told over a dozen times to cease texting and telephone calls, but the devils persist. Is this a university worthy of any respect? I think not, they deserve only the greatest contempt. Complaints filed online with the State Attorney General, FCC and FTC. Enough complaints, they will shut them down, severely fine them, and prosecute. All numbers blocked."[13]

---

[12] https://800notes.com/Phone.aspx/1-480-526-4844
[13] https://800notes.com/Phone.aspx/1-571-317-2228

- "Called again at 3:54pm PDT with caller id of 'unavailable' and did not leave a message. Called back and it was a telemarketer from North Entral University. Not interested."[14]

- "Called. Unknown. And didn't speak then hung up"[15]

- "Got dead air."[16]

- On January 28, 2017 a consumer posted the prerecorded voicemail that they received from NCU, showing that they were instructed to call 855-282-0409 (the same number Plaintiff Camphor was asked to call).[17]

## PLAINTIFF CAMPHOR'S ALLEGATIONS

30. Plaintiff Camphor began receiving autodialed education telemarketing calls in the beginning of August, 2019.

31. When Camphor answered the calls, he consistently noticed a distinct pause and then a click before a live agent would come on the line. The purpose of the calls was to convert Plaintiff into an education lead for Defendants.

32. Plaintiff told the first agent he spoke with that he was not interested in furthering his education. In subsequent calls, Plaintiff specifically asked the agents not to call his cell phone number.

33. Despite multiple stop requests, the agents continued to place unsolicited autodialed calls to Plaintiff Camphor's cell phone.

34. In one specific instance, Plaintiff Camphor answered the autodialed call to his cell phone and when he was asked about furthering his education replied, "Didn't I tell you I was on the DNC?" The agent replied, "F*ck you" and hung up.

35. On July 13, 2019, Plaintiff Camphor received yet another autodialed call

---

[14] https://800notes.com/Phone.aspx/1-650-727-1318
[15] *Id.*
[16] https://whocallsme.com/Phone-Number.aspx/2065391887
[17] https://directory.youmail.com/directory/phone/5708462092

from a telemarketer regarding continued education. Out of frustration, Camphor played along with the agent so that he could learn the true identity of the company behind or benefiting from the calls in an effort to stop the calls once and for all.

36. The agent asked him what subject he was interested in pursuing. The plaintiff answered "psychology." The agent asked him a series of questions related to his interests in pursuing a degree in psychology.

37. ***The agent did not ask the Plaintiff for his phone number*** or whether he would consent to receive autodialed or pre-recorded calls from Defendants or any other school. Furthermore, the agent did not request his consent in writing.

38. The agent explained to Camphor on that call, that he would be asked a number of questions by a screening agent in order for Camphor to be connected with a school. The agent then prepared Camphor by telling him what the questions were going to be.

39. Camphor was then transferred to a second agent who began asking Camphor the same questions the previous agent had prepared him for.

40. While the second agent was asking questions about education programs, Camphor simultaneously received a call on his cell phone from Defendants from the phone number 443-341-5711. He knew that this was a call since it rang through like any other type of call.

41. Camphor did not answer the call from Defendants, as he was still being questioned by the second agent that he had been transferred to.

42. Defendants left Camphor a prerecorded voicemail on his cell phone on August 13, 2019 at 4:51 PM from 443-341-5711:

> "Hello, this is Northcentral University calling in regards to furthering your education. Please call us back at 855-282-0409, or visit our website at NCU.edu. Thank you, and we look forward to speaking with you."

43. Plaintiff Camphor did not provide the third-party agent or Defendants

1 directly with any consent for them to call him using an autodialer or prerecorded
2 message.
3        44.    The phone number 443-341-5711 that was used to make the pre-
4 recorded call to the plaintiff, when called back, an automated recording identifies the
5 caller as *"Thank you for calling Northcentral University and JFKu FlexCourse, part
6 of National University systems. Please hold for the next available advisor."*
7        45.    When 855-282-0409, the phone number NCU asked Plaintiff to call
8 them back from the pre-recorded voicemail is called, an automated system identifies
9 that number as belonging to Defendant NCU.
10       46.    The prerecorded message asks Plaintiff to visit NCU.edu. This is NCU's
11 official website which identifies them as an affiliate of Defendant NU:



22 cell phone from Defendants on August 13, 2019, again using phone number 443-341-
23 5711.
24       48.    When Camphor answered the second call, he noticed a distinct pause
25 before a live agent came on the line. Camphor believes that based on the pause, the
26 call was placed using an autodialer.

---

[18] https://ncu.edu

49. Camphor spoke with an agent who said they were calling on behalf of NCU. In response, Camphor asked the agent if NCU purchases leads from lead generators. The agent hung up, rather than provide an answer.

50. Defendants did not obtain the prior express written consent to place solicitation telephone calls to Camphor on his cellular phone using a prerecorded call and/or an autodialer.

51. The unauthorized telephone calls made by or on behalf of Defendants, as alleged herein, have harmed Plaintiff Camphor in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

52. Seeking redress for these injuries, Plaintiff Camphor, on behalf of himself and Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits prerecorded and unsolicited autodialed telephone calls to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

53. Plaintiff Camphor brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> All persons in the United States to whom Defendants (or an agent acting on behalf of Defendants) made a telephone call on their cellular phone number using substantially the same calling system used to call Plaintiff and/or a prerecorded voice at any time during the four years preceding the filing of this action through the date of any order granting class certification.

54. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees,

officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

55. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

56. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) Whether Defendants placed prerecorded and/or autodialed calls to Plaintiff and the members of the Class;
>
> (b) whether Defendants placed prerecorded and/or autodialed telephone calls without first obtaining prior express written consent to make the calls;
>
> (c) whether Defendants' conduct constitutes a violation of the TCPA; and
>
> (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

57. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Camphor has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff Camphor. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor

his counsel have any interests adverse to the Class.

58. **Appropriateness**: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF

**Telephone Consumer Protection Act**

**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff Camphor and the Class)**

59. Plaintiff Camphor repeats and realleges paragraphs 1 through 58 of this Complaint and incorporates them by reference.

60. Defendants and/or their agents made unwanted solicitation telephone calls to Plaintiff Camphor and the other members of the Class using a prerecorded voice and/or autodialer.

61. These prerecorded voice calls were made *en masse* without the prior express written consent of Plaintiff Camphor and the other members of the Class.

62. Defendants' conduct was negligent, willful, or knowing.

63.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff Camphor and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each TCPA violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Camphor, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff Camphor as the representatives of the applicable Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff Camphor and the Class;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring Defendants to cease all unsolicited calling activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

On behalf of himself and the proposed Class, Plaintiff Camphor demands trial by jury on all claims and issues so triable.

Respectfully Submitted,

By: *s/ Rachel E. Kaufman*
Rachel E. Kaufman, Esq.
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

CLASS ACTION COMPLAINT
-14-

*s/ Amanda F. Benedict*
Amanda Benedict, Esq.
LAW OFFICE OF AMANDA BENEDICT
7710 Hazard Center Drive, Ste E104
San Diego, CA 92108
Telephone: (760) 822-1911
amanda@amandabenedict.com

*Counsel for Plaintiff and the Class*
